MARY McLEOD, EXECUTRIX, ETC., AND EMORY S. FRÀNK
v. JOHN W. FREE, ADMINISTRATOR, ETC., ET AL.

*Husband and wife—Joint mortgage—Survivorship—Reformation
of securities.*

1. The doctrine that where land is conveyed to a husband and
   wife jointly they take by entireties, and on the death of either
   the survivor takes the entire estate, does not apply to a
   purchase-money mortgage given to them jointly on the sale of
   land owned by the husband; citing *Wait v. Bovee,* 35 Mich.
   425.

2. The decree below, reforming a mortgage given to a husband
   and wife jointly so as to make the income therefrom payable
   to the wife during her life-time, if she survives her husband,
   is affirmed; it appearing that such was the intent of the
   parties, and that by mistake the mortgage did not·conform to
   such intent.

Appeal from Kalamazoo. (Buck, J.) Submitted on
briefs March 10, 1893. Decided June 16, 1893.

Bill to reform certain securities. Defendants John W.
Free and Henry C. Frank appeal. Decree affirmed. The
facts are stated in the opinion.

*Osborn & Mills,* for complainants.

*E. M. Irish,* for appellants.

LONG, J. Stephen W. Frank and Abigail Frank, both
deceased, were husband and wife. On December 28, 1889,
Stephen sold all his real estate, with the exception of a
village lot, to William Stuart and Edwin Roberts, his wife
joining in the deeds. To secure a portion of the purchase
money, a note and a mortgage were taken from Roberts,
and an assignment of a mortgage and the notes accompany-
ing from Stuart. The notes and mortgage and assignment

were all drawn payable to Stephen W. and Abigail Frank.. By the bill filed in this case it is claimed—

1. That the notes, mortgage, and assignment were not prepared in accordance with the intention and understand-ing of the parties, but that all that Stephen W. Frank intended was to have them so drawn that the income should go to his wife during her life in case she survived him, and that a mistake was made by the scrivener in making them payable to the parties jointly.

2. That, if no mistake was made, then the transaction. was intended as a testamentary disposition of the property, which was revoked by the last will and testament of Stephen, prepared and executed a few days after these conveyances.

The bill prays that the mortgage, notes, and assignment may be corrected in accordance with the intent of the par-ties, or that such instruments may be decreed to have been made as a testamentary disposition of the prop-erty; and that Mr. Free, as administrator of the estate of Abigail Frank, be enjoined from taking possession of such securities from the complainant McLeod, as executrix of the will of Stephen W. Frank.

On the hearing below the court found that it was not intended by Stephen or understood by Abigail that she should take by such instruments more than a life interest in these securities, and that all she did take was a life estate; and that such securities are now a part of the estate of Stephen, and in the possession of Mary McLeod, as such executrix. By this decree defendant Free was perpetually enjoined from taking any proceedings at law or otherwise to obtain possession of these securities, and the complainant McLeod was authorized and directed to collect, the same as a part of the assets of Stephen's estate, and dispose of the proceeds in accordance with the terms of his will. The defendants John W. Free, as administra-tor, and Henry C. Frank, alone appeal. The bill was. taken as confessed by all the defendants except those now appealing.

The contention on the part of the complainants is that the proofs abundantly sustain their position. It appears that on May 2, 1889, Stephen made a will. This was prior to the sale of the real estate. By the will he devised the use of substantially all the real estate to his wife during. her natural life. Within a few days after he sold the real estate he directed a new will to be made. It revoked all former wills. At the time of its execution he had a small amount of personal property, a village lot, which he willed to his daughter, Mrs. McLeod, and the securities above described. He gave his wife a life interest in the village lot, all his furniture, etc., and bequeathed to his executors. in trust the remainder of his estate, with power to sell and convey and convert into money, and the income of which was to be paid annually to his wife so long as she lived. His son Henry C., upon the death of his mother, was to be paid $100 in addition to the $2,000 or $3,000 he had already given him. Certain of his grandchildren living at. his decease were each to receive $100, and his son Emory S. the sum of $2,000; and the residue, after paying the funeral expenses, for tombstones, etc., he gave to his daughter, Mrs. McLeod, and his son Emory S. He made his wife and his daughter, Mrs. McLeod, executrices of his. will.

On February 12, 1890, Stephen W. Frank died. On the 27th of that month Mrs. Abigail Frank filed a petition in the probate court for probate of the will, and, she refusing to act as executrix, the trust was assumed by the daughter, Mrs. McLeod. The son Henry receipted for all that was his due under the will. On June 27 following Abigail receipted for all she claimed of the personal estate under the will, which amounted to $315.10. After this time the widow received the income from these securities, and, so far as appears by this record, never made any claim that they or any part of them belonged

to her.   She died December 26, 1890.   These securities were found among the papers of Stephen W., and passed into the hands of Mrs. McLeod, as executrix, and were treated as a part of the estate of Stephen until after the death of his widow.   In 1891, Henry C. Frank filed a petition in the probate court for the appointment of an administrator of the estate of his mother, and Mr. Free was so appointed.   Shortly thereafter it was claimed that these securities belonged to the estate of Abigail, upon the theory that she took the absolute title to them as survivor of herself and her husband, to whom they were jointly made, and this bill was thereupon filed.   There is no controversy in the case except such as grows out of these securities, and, so far as appears, no rights of creditors are concerned.   The naked question is, did the wife take these securities at the death of her husband?

The husband was the owner of the land out of which the securities grew.   After they were taken, they were treated as his individual property during his life-time. He dealt with them as such, and at his death disposed of them by his will.   His wife, as it appears, always regarded them as his property during his life-time, and after his death acquiesced in their being inventoried and treated as a part of his estate, taking and receipting for her share and interest in the estate as given her by the will, and was apparently satisfied to have the securities treated as a part of her husband's estate up to and at the time of her death.   No one raised any question about it, until after her death, when the son Henry C., who was given only $100 by his father's will, made the claim that the securities belonged to his mother's estate.

Counsel for defendants cites cases in his brief where it has been held by this Court that a joint deed to husband and wife conveys the estate to them by entireties, and that the right of survivorship exists in such cases, so that

where one dies the other is vested with the whole estate.[1] But this doctrine has not been applied to mortgage securities with such strictness. In *Wait v. Bovee,* 35 Mich. 425, 429, it was said:

"The drift of policy and opinion, as shown by legislation and judicial decisions, is strongly adverse to the doctrine of taking by mere right of survivorship, except in a few special cases; and it should not be applied except where the law in its favor is clear."

In the above case the husband and wife were each possessed of considerable means, and made investments jointly, each supplying half of the funds. On the death of the husband the wife claimed the whole of the securities by right of survivorship. This right was denied, and it was said:

"Our own decisions relative to the rights of husband and wife in case of united holdings of real estate afford no argument here."

It is evident from the testimony given by the complainants in the present case that the scrivener in drafting the mortgage, notes, and assignment did not make them in accordance with the understanding of the parties. It is also evident from the testimony of the witnesses that Abigail never understood that she had any more right in these securities than she had in the real estate out of which they grew. The will was made within four days after they were taken, and by the will she was given a life interest in them. Equitably they were a part of the estate of the husband, and, being so treated by the parties themselves, and so understood by them, they must now be so treated, and reformed accordingly. In any event, only one-half could go to the estate of the wife under the rule in *Wait v. Bovee, supra;* but, under the facts shown, the whole

---

[1] *Fisher v. Provin,* 25 Mich. 347; *Insurance Co. v. Resh,* 40 Id. 241; *Manwaring v. Powell,* Id. 371; *Jacobs v. Miller,* 50 Id. 119; *Vinton v. Beamer,* 55 Id. 559; *Dowling v. Salliotte,* 83 Id. 131.

securities must be treated as belonging to the estate of the husband.

The decree of the court below must be affirmed, with costs.

HOOKER, C. J., MCGRATH and GRANT, JJ., concurred with LONG, J.

MONTGOMERY, J. (*dissenting*). I do not think that the evidence justifies the conclusion that there was any mistake in drafting the notes and mortgage.