MAGNESS v. ISGRIG.

Opinion delivered October 4, 1920.

LIBEL AND SLANDER — TRUTH OF CHARGE.—In an action of libel for falsely charging that plaintiff refereed a "prize fight," where the evidence proved that plaintiff refereed a boxing match on the result of which an outsider made a bet, although there was no prize to the contestants and no decision as to who won, the boxing contest was a prize fight in a popular sense, so that, the charge being true, no action of libel could be grounded upon it.

Appeal from Independence Circuit Court; *Dene H. Coleman*, Judge; reversed.

*Chas. F. Cole, McCaleb & McCaleb,* for appellants.

The court should have directed a verdict for defendants, because (1) so far as the allegation as to the prize fight is concerned, the uncontradicted evidence shows this charge to be true, and, if true, the opinion expressed that appellee was not a fit person to be at the head of the public schools was justified and did not constitute libel. (2) The charges were clearly privileged, and there was no evidence of malice. 123 Pac. 478; 21 Idaho 609. Defendants were patrons of the school district, and it was their duty to speak and that of the Superintendent of Public Instruction to hear such charges. They were clearly privileged. 100 Ark. 477. Where no malice is shown, it is the duty of the court to direct a verdict. The burden was on plaintiff, as malice must be shown and is never inferred, but must be proved. 100 Ark. 477; 13 Am. St. Rep. 775-6 and note; *Brice* v. *Curtis*, 1913 C, Ann. Cas., p. 1070 and note; 7 A. & E. Ann. Cas., p. 192; 3 A. L. R., p. 1651. The circumstances and the charges themselves gave no evidence of malice on the part of appellants, and the communication was privileged. 25 Cyc. 376; 40 Am. Rep. 477; 56 *Id.* 274; 2 Am. St. 870-1-2. In conclusion, it is urged that the lower curt erred (1) in failing to instruct a verdict for defendants, (2) in permitting the statement of Mr. Pickens in Bond's deposition to be read to the jury; (3) in striking out the statement of Mr. Henderson, which was in the hands of ap-

pellants at the time they filed these charges regarding the result of his examination of the books of canning factory; (4) in refusing to permit S. C. Knight to testify as to the condition he found the books of the canning factory and his report to these appellants; (5) in refusing to give instructions 1, 2, 3 and 4, asked by appellants; (6) in refusing to accept the first verdict of the jury and in further instructing them.

*Fred A. Isgrig* and *Ernest Neill,* for appellee.

1.  The first slanderous charge constituted libel *per se.*  4 Ark. 110; 103 *Id.* 345; 72 *Id.* 421.

2.  The third charge was also libelous.  90 Ark. 117; 56 *Id.* 100; 72 *Id.* 421.

3.  The fourth charge was actionable *per se,* as it charged a violation of the law of the State.  The second charge as to the prize fight is admitted to have been libelous.  The trial court held the charges qualifiedly libelous, and it was tried on that theory, which was all or more than the facts warranted.  77 Ark. 64; 30 L. R. A. (N. S.) 200.  Malice is shown by the evidence.  As to the meaning of "prize fight," see 32 Cyc. 297; 8 R. C. L. par. 320, pp. 349; 43 Pac. 783; 56 N. W. 27.      .   •

4.  As to the canning factory, the evidence shows it was a small local organization organized through local enthusiasm and public spirit, the stock being subscribed by local people, none of whom were experienced or had sufficient financial interest to justify the giving of much time or attention to it.  It failed at the end of the second year, and all the stockholders lost their investment.  Appellee lost his stock and as much as any of the others and contributed his share of the loss.  There is absolutely no proof of mismanagement on part of appellee. The charge of failure to attend the institute fails for want of proof.  He did visit the teachers' institute in 1915 and 1916 and the State Teachers' Association in 1916 and 1917 and had a State license since May, 1916. Appellants were liable if any of the charges were false. The instructions completely covered the law.  15 Pick.

340; 32 Ark. 166; 63 *Id.* 387; 13 S. W. 596. The case was fairly tried and free of errors, and the verdict is fully sustained by the evidence.

Woods, J. The appellee held a State certificate showing that he was authorized to teach in the public schools of the State of Arknasas. He was engaged to teach school for the year 1918 in Independence County, Arkansas, where he resided. Appellant, B. A. Magness, was a director of the school district where the appellee was employed to teach, and appellants, J. F. Cosey and C. N. Fields, were ex-directors in that district.

In 1917 appellants and nine others, residents of Independence County, addressed a petition to Hon. J. L. Bond, State Superintendent of Public Instruction of the State of Arkansas, which reads as follows:

"Dear Sir: We, the undersigned, patrons of the Newark Special School District of Newark, Independence County, Arkansas, No. 33, respectfully show and represent that W. A. Isgrig, who holds a State certificate to teach in the public schools of Arkansas, and who has been employed, as we are informed, by the school board of said district, by a divided vote, as superintendent of said school for the coming year, is a person, as we believe, unfit to hold a State license or teach in the public schools of said State on account of his moral character, and we respectfully prefer against him the following charges, towit:

*First.* That the said W. A. Isgrig on or about the last day of August, 1916, near Newport, Jackson County, refereed a public prize fight between two men, in the presence of a large crowd of persons, and otherwise participated and encouraged said prize fight, in violation of good morals, and the statute laws of the State of Arkansas.

*Second.* That, during the years 1915 and 1916, he was secretary and manager of the Newark Canning Company, having charge of its business and finances, and, acting in that capacity, so managed said business that it

proved an absolute loss to many persons who are patrons of said school, and has wholly failed and refused to render said persons any intelligent or satisfactory statement of the losses of said business, and has subjected himself to charges of gross carelessness and mismanagement on account thereof.

*Third.* That the said Isgrig, who has been a resident of Independence County for the past three years, has not registered in the teachers' institute in said county as the law directs. That, on account of the foregoing, and other improper acts on his part, we deem him a person wholly unfit to hold said license; and respectfully ask that he be required to make answer hereto, and that on a full hearing hereof his said license be revoked and annulled.''

The appellee instituted this action against the appellants, setting out the above petition and alleging that it was maliciously published and circulated by the appellants concerning the appellee; that the statements were false, malicious, scandalous, defamatory, slanderous and libelous; that they tended to blacken and injure the honesty, virtue, integrity, morality, and reputation of the appellee, and to expose him to public contempt, hatred and ridicule, and to injure and damage him in his profession, character and reputation; that he was caused great inconvenience and expense to meet and defend the charges, to his damage in the sum of $5,000. Appellee alleged that he had been greatly humiliated and disgraced and put to shame, which caused him great mental anguish and much worry, all to his damage in the sum of $20,000.

The appellants answered and alleged that appellant, Magness, was a school director and the other appellants were patrons and taxpayers, and as such, interested in the Newark School District No. 33, of which district appellee had been elected and was acting as the superintendent of the school; that, acting upon information which they deemed reliable and which they believed to be true, they signed the petition set out in appellee's

complaint and presented the statement to other patrons of the school who signed it; that they caused this petition to be filed with the Superintendent of Public Instruction for the purpose of having the license of the appellee as a teacher revoked. They denied that they were actuated by any malice or ill will toward the appellee, but say they were influenced solely by a sense of duty as director and patrons of the school and taxpayers of the district in the interest and welfare of the patrons and pupils of the school; that the statements contained in the petition were privileged and were, therefore, not a basis of liability against the appellants.

The appellee testified concerning the alleged prize fight as follows: The fight was held on Labor Day, the first Monday in September, 1916, between one Cliff Edwards, a Newark man, and Bennie Palmer, who was with a carnival at Newport, giving exhibitions of boxing and lecturing on physical development and care of the body. He met any and all comers during the carnival. Some of the friends of Edwards arranged for a boxing contest in Palmer's tent on Saturday night, the first Monday in September. For some reason Edwards did not appear and they postponed the contest until Monday. There was some difficulty in securing a referee. Dr. Virgil Pascoe, a reputable physician, property owner and leading citizen of Newark, who had four children in school under appellee, and Mr. Holderby of Newark, came to appellee and asked him if he would referee the boxing contest, stating that if the appellee refused they would not go on with it. Appellee told them that he did not know the rules of boxing; that he knew what a foul was and that was the extent of his knowledge. They assured the appellee that there was nothing to it except a boxing contest like those that had been conducted at the Elks' hall and like what had been going on all week before. Appellee consented on condition that he was not to make a decision as to who won or lost, but was just to keep the two men from making fouls, hitting below the belt or during clinches, or using unfair means in the boxing contest.

There were thirty or forty people from Newark
there and a number of the patrons of the school, fathers
of children in the school. The appellee had nothing to
do with arranging the contest, and there was no prize
money paid, so far as he knew. Appellee expressly told
those who requested him to referee the contest that he
would not do so if it was to be a prize fight, and he was
assured by them that there would be no prize, and he was
told by Edwards that he was to receive nothing. Appel-
lee refereed the contest under the belief that there was to
be no prize or reward.

The boxing match was pulled off across the river
about a quarter of a mile up the river from Newport.
It was in the woods. Everybody up and down Main
street knew where it was going to be. It was free for all.
About sixty people went up on the boat. Appellee was
always the leader in school athletics. They had the
ground fixed and the rope stretched when the appellee
got there. The place was about twenty feet square. The
contest stopped at the end of the tenth round. The ap-
pellee did not know the terms of the contest, but only
knew the terms that he made. He did not see the par-
ties to the contest receive any reward.

Cliff Edwards testified that he was one of the prin-
cipals in the so-called prize fight. He did not understand
from anybody that he was to get any sort of reward.
''He just fought a social bout because he liked the game.''
They used nine-ounce gloves—large ones. He did not
know anything about anybody having any money bet on
the game with the understanding that the winning party
was to participate in the winnings. Witness was not paid
or promised anything in the fight. The whole crowd
made up a collection and gave it to witness. There
was no decision by the referee as to who won the fight.
The referee stated that he would not give any decision
at all. His duty was to give no decision. If the other
principal hit foul, or if witness hit foul, the referee was
to call the foul. A foul was to hit below the belt. There
are certain rules on clinching. They have to hold a cer-

tain length of time. The referee is supposed to pull them loose and let them "bat it again." The referee was in the ring. It was his duty to pull the contestants apart when they clinched. Witness was not badly beaten up. He got blacked up in the face by the other fellow's gloves. He hit witness a few times in the face and it brought some blood from his lip. Witness had a sore lip and the licks opened it up. It was the agreement to have ten rounds. Witness quit when the time ran out. The referee was not to keep track of the rounds. Some fellow in the crowd was calling time. Witness thought there were some preachers in the crowd. Witness thought maybe some of his friends had money up and wanted to save them. He thought if they had, he didn't aim for them to lose. He didn't know who had money bet on him. Witness did not knock the other man down and he did not knock witness down. He didn't know whether the other man did his best or not—witness didn't do his best—was just fooling with him lightly.

Herman Williamson, another witness for the appellee, testified that appellee said he would call the fouls, but would not render any decision. There was one time when the other contestant struck Cliff Edwards in the stomach. Appellee called that a foul. Appellee did not call time. Witness thought they had a time-keeper. The contestants were fighting with gloves—hitting as hard as they could. A gasoline boat came up the river and part of the crowd ran back up the bank. Witness did not run.

Another witness for the appellee stated that he and another fellow arranged the boxing match, or so-called prize fight. Witness, who arranged for Edwards to enter the contest, did not offer him any prize. He did not know what kind of arrangement they had with the other fellow. Witness, Doctor Pascoe and others procured Isgrig as the referee. He did not wish to referee the contest, but finally consented to call the fouls. No decision was rendered. It was called a draw. Witness bet $100 on Edwards. If Edwards had knocked the other

man out witness would have received $100. Witness' bet was with Sullivan, who arranged for the other contestant.

There was testimony on behalf of the appellee tending to prove that the petition had been circulated in Newark by the appellants to obtain signatures before it was presented by them to Superintendent Bond. Bond's testimony shows that the petition was presented to him in 1917. He examined the charges and made a written finding and report in which, among other things, he stated: "I can not help but feel that Mr. Isgrig has been indiscreet in some of his actions, but I do not feel that under the circumstances after a careful consideration of the whole matter that this department, under the law, would be warranted in going to the extent of revoking the license of Mr. Isgrig." The Superintendent concluded his report with the recommendation "that all parties concerned in this affair will forgive and forget * * * and that all concerned will join to make the school a success in every way."

The above states the testimony in its strongest light in favor of the appellee on the only cause of action stated in the complaint, towit, that the appellee was the referee of, participated in, and encouraged a prize fight, "in violation of good morals and the statute laws of the State of Arkansas." The other charges did not tend to impeach the "honesty, integrity, veracity, virtue or reputation of the appellee and thereby to expose him to public hatred, contempt and ridicule," and therefore were not libel. Section 1850, Kirby's Digest. No cause of action could be predicated upon these charges.

Our statute makes it "unlawful for any person to fight a prize fight, either with or without gloves, * * * and to act as second or referee at any prize fight in this State or by otherwise participating in the same." The penalty for violation of the above statute is a fine of not less than $1,000 or more than $2,500. Sections 1983-84, Kirby's Digest. It will be observed that the term "prize fight" is not specifically defined in the statute, and it is

obvious that the Legislature did not use the term in a technical sense. The manifest purpose of the law makers was to prohibit a pugilistic encounter or boxing match conducted for a prize or wager, where the contestants, or the promoters, or those witnessing the exhibition were expecting to reap a reward as a result of the contest. It was doubtless the purpose of the framers of the law to prohibit all such contests, whether conducted publicly or privately, because as public exhibitions they usually attract to the ring side a crowd of enthusiasts who are incited to bet their money upon the result of the contest. In such case the winning party, whether he be one of the contestants or an onlooker, receives a wager. One of the definitions of "wager" is a "prize." (Webster's Dict.). It is wholly immaterial, so far as the effect on public morals is concerned, whether the prize goes to one of the pugilists, or whether it goes to one of the promoters, or to others who are present and betting on the contest. Profligacy and gambling are thus encouraged. Quarrels and fights, besides the fight staged, are likely to result. It was because of these vicious tendencies and pernicious effects on the peace and good order of society that our statute prohibits prize fighting, using the term in its ordinary sense and as it is commonly understood, rather than according to the rules and in the sense which professionals or experts would use in defining it. 8 Rul. Cas. Law, § 349, p. 320; *Seville* v. *State,* 49 Ohio St. 117; 15 L. R. A. 516; 6 Words & Phrases, "Prize Fight;" *People* v. *Taylor,* 96 Mich. 57. See, also, *People* v. *Finucan,* 80 N. Y. Sup. 929, 80 App. Div. 627.

The above testimony shows that the fistic rencounter, of which appellee was the referee, was a "prize fight" in the sense in which that term is used in our statute, and in which it is commonly understood. Even if not a prize fight according to the terminology of experts of the prize ring, it was so near akin that the appellants were fully justified in so considering and designating it in the charges lodged by them with Superintendent Bond

against the appellee, as grounds for the revocation of his license to teach. The charge, being true, no action for libel could be grounded upon it.

The appellants were entitled to have the jury instructed to return a verdict in their favor. They prayed the court for such an instruction, and the court refused to grant their prayer. The judgment is therefore reversed and the cause is dismissed.

CONCURRING OPINION.

McCULLOCH, C. J. (concurring). I deem it unnecessary to decide, and am unwilling to decide at this time, that the undisputed evidence shows that it was a "prize fight," within the meaning of the statute, at which appellee attended and acted as referee. But it was indeed a prize fight in a popular sense, with all the circumstances commonly understood to attend such an immoral performance. This is clearly shown from the facts set forth in the original opinion. So far as it might affect the morals and reputation of those who participated or who attended, it was a prize fight. Therefore, appellants having made the charge under a qualified privilege, it was true in the sense in which it was made—that it affected the moral character of the person charged. For that reason I concur in the judgment.

Mr. Justice HUMPHRIES concurs in these views.

HART and SMITH, JJ., dissent.